IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| APPLIED PREDICTIVE TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MARKETDIAL, INC., JOHN M. STODDARD, and MORGAN DAVIS,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Case No. 2:19-cv-00496-JNP-CMR<br><br>District Judge Jill N. Parrish |

Before the court is a motion brought by MarketDial Inc., John M. Stoddard, and Morgan Davis (collectively "Defendants") requesting that the court sanction Plaintiff Applied Predictive Technologies Inc., ("APT") for alleged violations of Rule 3.4(f) of the Utah Rules of Professional Conduct committed by counsel for APT. ECF No. 302. The court DENIES Defendants' motion.

## BACKGROUND

Defendants John M. Stoddard and Morgan Davis were previously employed at two consulting firms that had been hired by APT. While working for these consulting firms, Mr. Stoddard and Mr. Davis had access to APT's confidential information. In 2015, Mr. Stoddard and Mr. Davis co-founded MarketDial, Inc., a predictive business analytics company that directly competes with APT. In 2018, APT initiated this lawsuit against Defendants alleging that they had misappropriated APT's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Utah Uniform Trade Secrets Act ("UUTSA"), UTAH CODE § 13-24-1 *et seq.*, and had engaged in breach of contract, fraud, civil conspiracy, and tortious

interference with contract. ECF Nos. 1, 188. APT retained Dentons US LLP ("Dentons") as lead counsel for this case and Ray, Quinney & Nebeker P.C.as local counsel. ECF No. 302. Defendants filed a motion to dismiss, and on March 17, 2022, this Court dismissed the breach of contract, fraud, civil conspiracy, and tortious interference claims against Defendants. ECF No. 296. However, the two misappropriation of trade secrets claims remained. *Id.*

One of the key disputed elements in the misappropriation of trade secrets claim is the scope of APT's trade secrets. APT has repeatedly asserted that its prospecting process and the associated marketing materials, such as PowerPoints concerning APT's user interface and sales pitch, are confidential trade secrets. ECF Nos. 23, 102, 189. But Defendants assert that any information that APT disclosed to potential customers without requiring that the potential customers sign a Non-Disclosure Agreement (NDA) is not confidential. ECF No. 302.

To determine what APT regularly disclosed to customers in the absence of a NDA, Defendants messaged former APT salespeople via LinkedIn, an online professional networking platform. For example, Mr. Davis sent the following message to former APT employee Brian Yeh.

> **Random favor?**
>
> Hey Greg,
>
> Hoping you can help with a super random ask. We've got a lot of mutuals in common that can vouch for me :)
>
> I'm the CEO of MarketDial, a competitor to APT in the test and learn space. I'm trying to learn a bit more about APT's prospecting process. APT's actually suing MarketDial claiming that any viewing of their ux or sales pitch deck is trade secret theft. We've heard from others this is routinely shared without an NDA. We're candidly trying to triangulate our defense. Hoping you'll corroborate the base fact that APT regularly shares these w/o an NDA.

> I know it's a reach but hoping you'll help a founder out here :)
>
> Morgan

Davis LinkedIn Message Ex. A, ECF No. 334-1. At first, some of APT's former employees responded to the messages sent by the Defendants. *See* Frekko–Osborne Email Exchange Ex. 2, ECF No. 302-2 ("Hey Kelly, thanks for taking the time to talk with me yesterday! Based on our conversation, it sounds like you and the other salespeople at APT consistently pitched APT's software, including sharing presentations. . . . If I've misunderstood anything, let me know.")

On August 2, 2021, upon being alerted that Defendants were reaching out to former APT employees on LinkedIn, Jennifer Bennett, an attorney for Dentons, sent out thirteen unsolicited LinkedIn messages to former APT employees. The message stated:

> I apologize in advance for this unsolicited message in your LinkedIn account. I am an attorney for Applied Predictive Technologies in a lawsuit APT filed against MarketDial and its co-founders Morgan Davis and Johnny Stoddard alleging, among other things, they misappropriated APT's trade secrets. Unfortunately, we understand that Morgan Davis may have recently reached out to you on LinkedIn, because you are a former APT employee, seeking confidential APT information relating to APT's prospecting process. If you did not receive a message from Mr. Davis, I am sorry to have bothered you and you can ignore this message. If you did receive such a message from Mr. Davis, if you could please let me know immediately, and please let me know if you responded to Mr. Davis. We kindly ask that you do not respond to any such communications. As a reminder, APT employee's obligation to maintain the confidentiality of APT's confidential information continues after departure from APT. APT considers its prospecting process confidential.

Bennett LinkedIn Message, Aug. 2, 2021 Ex. 1, ECF No. 304-1.

On August 3, 2021, Kirk Ruthenberg, another attorney employed by Dentons, emailed Defendants' counsel and "demand[ed] that your clients immediately cease and desist from any efforts to contact APT's former or present employees . . . ." Ruthenberg Email, Aug. 3, 2021 Ex.

7, ECF No. 302-7. Dentons also informed Defendants' counsel that Dentons intended to represent all former APT employees who were expected to serve as witnesses in this case. *Id.* ("Additionally, it is the intention of APT to have Dentons represent any former APT employee who is or is expected to be a witness in connection with this litigation.").

On August 4, 2021, Defendants' counsel responded that APT and Dentons' behavior "raises serious concerns under Rule 3.4 of Utah's Rules of Professional Conduct." Finberg Email, Aug. 4, 2021 Ex. 8, ECF No. 302-8. On August 6, 2021, Dentons replied to Defendants' counsel and disclaimed all allegations that they had violated Rule 3.4. Ruthenberg Email, Aug. 4, 2021 Ex. 9, ECF No. 302-9 ("We categorically reject your unfounded suggestion that we are doing anything that could remotely raise concerns about Rule 3.4 of Utah's Rules of Professional Conduct."). Following the LinkedIn message sent by Dentons on August 2, 2021, none of the former APT employees responded to Defendants.

Afterwards, Defendants issued subpoenas to the former APT employees. At the time this motion was filed, Defendants had deposed five former APT employees and had scheduled six more depositions. ECF No. 336 at 6–7. Defendants asked the former APT employees about the contents of the LinkedIn messages that had been sent by Dentons on August 2, 2021 during the depositions. Charette Dep., ECF No. 304-10. Dentons advised the former APT employees to refrain from answering and assert that the contents of the LinkedIn messages were protected by the attorney-client privilege. *Id.* at 69:1–69:24. Defendants contested the assertion that the August 2, 2021, LinkedIn messages were privileged and filed a motion requesting that Dentons produce these messages. ECF No. 222. On February 3, 2022, Magistrate Judge Romero ordered APT to produce the LinkedIn messages, ECF No. 283, asserting that attorney-client privilege was inapplicable because the former employees were not clients of Dentons when the messages

4

had been sent. *Id* at 4 ("The two LinkedIn messages clearly demonstrate Frekko was not seeking advice from either Mr. Jackson or Ms. Bennett. . . . Under no set of circumstances does the law support Plaintiff's assertion that such messages are privileged.").

Defendants ask the court to sanction APT for Dentons' conduct surrounding the August 2, 2021 LinkedIn messages. Defendants first assert that by sending the unsolicited LinkedIn messages Dentons violated Rule 3.4(f) of the Utah Rules of Professional Conduct. ECF No. 302. Because of this alleged violation, Defendants request that at trial, the court provide a jury instruction that Defendants are entitled to an inference that the testimony of the former employees would have been more favorable to Defendants absent Dentons' intervention. ECF No. 304 at 9. Second, Defendants assert that Dentons, in bad faith, asserted faulty attorney-client privilege claims in order to cover up the ethical violations committed by Dentons' attorneys in sending the LinkedIn messages. ECF No. 304, at 11. Defendants ask the court to award them attorneys' fees arising from additional measures Defendants had to take to discover information that could have been more easily discovered had Dentons not sent the August 2, 2021 LinkedIn messages. *Id.*

## LEGAL STANDARD

> A lawyer shall not . . . request a person other than a client to refrain from voluntarily giving relevant information to another party unless: (1) the person is a relative or an employee or other agent of the client; and (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

UTAH R. PROF. COND. § 3.4(f). "[T]he adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly

5

influencing witnesses, obstructive tactics in discovery procedure and the like." UTAH R. PROF. COND. § 3.4 cmt. 1.

## ANALYSIS

The court is persuaded that the thirteen unsolicited LinkedIn messages sent by Dentons on August 2, 2021 do not violate Rule 3.4(f). The LinkedIn messages meet the first two prongs of a 3.4(f) violation. The LinkedIn messages were sent by Jennifer Bennett, who is an attorney, and when the messages were sent, the former employees who received the messages had not retained either Dentons or Ms. Bennett as counsel. The only remaining question is whether the messages ask former APT salespeople to refrain from giving Defendants relevant information.

Defendants argue that Dentons has violated Rule 3.4(f) because the messages ask former employees to refrain from disclosing information regarding APT's prospecting process. This information is essential to defendants' defense in the misappropriation of trade secrets claim. But Dentons argues that the messages do not violate Rule 3.4(f) because the LinkedIn messages only remind former employees to refrain from violating a pre-existing duty of confidentiality. The court agrees with Dentons.

The court is persuaded that the LinkedIn messages do not request that the former APT employees refrain from sharing *any* relevant information with Defendants, but rather, asks only that the former employees refrain from sharing *confidential information* with Defendants. By way of introduction, the LinkedIn messages state that "Morgan Davis may have recently reached out to you on LinkedIn, because you are a former APT employee, seeking confidential APT information relating to APT's prospecting process. . . . We kindly ask that you do not respond to

any *such* communications."[1] Bennett LinkedIn Message, Aug. 2, 2021 (emphasis added). Dentons further clarifies that "APT considers its prospecting process confidential" and that "APT employee's obligation to maintain the confidentiality of APT's confidential information continues after departure from APT." *Id.* Dentons provides Ms. Bennett's contact information in case the former APT employees are unclear about what they can share with Defendants. *Id.* Simply stated, the court is convinced that Dentons did not ask former APT employees to refrain from communicating with Defendants on all relevant matters, but only regarding confidential ones.

The fact that this case involves trade secrets claims under the DTSA and UUTSA illuminates Dentons' motivations for sending the LinkedIn messages to the former employees. Under both the DTSA and UTSA, information qualifies as a trade secret only if the owner has taken reasonable efforts to keep such information secret. *See* 18 U.S.C. § 1839(3)(A); UTAH CODE § 13-24-2(4)(b). "The burden of demonstrating the existence of a trade secret is on the plaintiff, and there is no presumption in his or her favor." *Envirotech Corp. v. Callahan*, 872 P.2d 487, 494 (Utah Ct. App. 1994). "[T]rade secret law, however, does not offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure, or by so-called reverse engineering . . . ." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 473 (1974).

APT claims that its prospecting process is a trade secret. If APT had decided not to act upon learning that Defendants were reaching out to former employees regarding APT's prospecting process, Defendants could later assert that APT's failure to act serves as evidence

---

[1] In their motion for sanctions, Defendants replaced the word, "such," with ellipses, thereby materially altering the meaning of the prior sentence. ECF No. 302 at 2.

that APT concedes that its prospecting process is not a trade secret. And, in fact, Defendants did make such a claim with respect to information gleaned from APT's response to this motion. Defendants assert that APT's disclosure that NDAs were required in one part of the prospecting process undercuts APT's claim that APT's prospecting process is a trade secret. Reply at 5, ECF No. 344 (refuting APT's assertion that disclosure restrictions during the prospecting process are trade secrets because "APT publicly discloses [in its opposition brief], without redaction, a former employee's testimony that APT required an NDA before performing a live demo of its software but not for certain other presentations . . . .").

Defendants assert that because they were not seeking confidential information, APT's messages were improper. Defendants provide the deposition of a former APT employee to support their claim. *See* Hsu Depo. Ex. 6 at 29:5–8, ECF No. 304-6 (affirming that Mr. Davis reminded the witness not to reveal APT's confidential information during their conversation). Defendants also argue that Dentons could have requested an injunction pursuant to 18 U.S.C. § 1836(b)(3)(A) if Dentons was concerned about Defendants misappropriating trade secrets through the discovery process. But the question here is not whether Defendants were conducting improper discovery, but whether the messages Dentons sent to the former APT employees violated Rule 3.4(f). Even if Defendants did not request confidential information, an unintentional disclosure by a former APT employee could compromise the alleged trade secret. Accordingly, the relevant inquiry is whether 3.4(f) prohibits attorneys from warning non-clients against violating preexisting duties of confidentiality.

The court is not persuaded that Rule 3.4(f) prohibits an attorney from reminding non-clients that they owe a legal duty to the attorney's current client. Defendants cite *Harlan v. Lewis*, 982 F.2d 1255 (8th Cir. 1993), *Synergetics, Inc. v. Hurst*, No. 4:04CV318CDP, 2007 WL

2422871 (E.D. Mo. Aug. 21, 2007), *Massachusetts Inst. of Tech. v. Imclone Sys., Inc.*, 490 F. Supp. 2d 119 (D. Mass. 2007), and *Harris v. SCA Rest. Corp.*, No. 09-CV-2212 JFB ETB, 2014 WL 996249 (E.D.N.Y. Mar. 14, 2014), for the proposition that courts may sanction counsel for Rule 3.4(f) violations. However, the facts here materially differ from those in the cited cases. In *Harlan*, defense counsel convinced the plaintiff's treating physicians to refrain from cooperating with opposing counsel and from providing expert testimony. *Harlan*, at 1259. In *Synergetics*, counsel conditioned a settlement agreement on the witness not testifying at trial. *Synergetics*, at *9. Counsel in *Imclone* had "for all intents and purposes demand[ed] that [the witness's employer] rein [the witness] in." *Imclone*, at 126. In *Harris*, the defendant threatened to fire the witnesses if they testified at trial. *Harris* at *4. In short, these cases can be distinguished because the counsel in these cases engaged in clear violations of Rule 3.4(f).

The purpose of Rule 3.4(f) is to maintain "[f]air competition" and protect against counsel "improperly influencing witnesses." UTAH R. PROF. COND. § 3.4 cmt. 1. The court balances the Defendants' rights to informally gather relevant information from witnesses ex-parte against APT's right to protect information it claims is confidential. Because "the nondisclosure obligation would exist even in the absence of the lawyer's request, [] it would serve no purpose to read the rule to prevent a lawyer from taking steps to ensure compliance." Jon Bauer, *Buying Witness Silence: Evidence-Suppressing Settlements and Lawyers' Ethics*, 87 OR. L. REV. 481, 560 (2008); *see* ALA. R. PROF. COND. 3.4(d)(2) (providing, under a similar conduct rule, that an attorney may request a non-client refrain from giving relevant information when "[t]he person may be required by law to refrain from disclosing the information . . . ."). However, "[s]eeking to block the disclosure of information about wrongful conduct that is relevant to the claims of other

9

litigants . . . under the guise of trade secret protection, would violate Rule 3.4(f)." Bauer, *supra*, at 561.

It can hardly be the case that reminding witnesses of a pre-existing legal duty rises to the level warranting sanctions. The messages are not "inappropriately heavy-handed," and do not, as Defendants suggest, "go[] so far as to insinuate that the witnesses may end up being sued if they responded to Defendants' inquiries." Reply at 8, ECF No. 344. Furthermore, Defendants had the opportunity to depose the former employees. Defendants have already deposed five former APT employees and have scheduled six more depositions. In *Harlan*, *Imclone*, *Synergetics*, and *Harris*, counsel either dissuaded or fully prevented the witnesses from testifying at trial, in effect denying opposing counsel the ability to use relevant information that the witnesses may have been able to provide. Here, the primary injury resulting from Dentons' actions is that Defendants are forced to issue subpoenas to the former employees. In short, the court concludes that the messages sent by Dentons do not rise to the level of a 3.4(f) violation.

Defendants assert that Dentons' claim that the LinkedIn messages were cabined to protecting APT's confidential information is largely pretextual. The court is aware that former APT employees are unlikely to have carefully parsed the language of the message. Thus, receiving Ms. Bennett's LinkedIn message would have had the practical effect of preventing the former employees from further communicating with Defendants. However, the court is unaware of, and Defendants fail to cite, relevant law supporting the proposition that attorneys should be sanctioned under Rule 3.4(f) when their communications have the practical effect of deterring communications, but the actual communication does not unambiguously deter the non-client from communicating.

In balancing Defendants' right to informally contact witnesses against APT's right to protect its confidential information, the court finds Dentons' baseless allegations of attorney-client privilege informative as to Dentons' motivations for sending the messages. After Dentons had sent the messages, it sought to represent all former APT employees who Defendants intended to subpoena. During the depositions, Dentons advised former APT employees to refuse to testify regarding the contents of the LinkedIn messages and assert that the communications were protected by attorney-client privilege. *See* Charette Dep. at 69:1–69:24. However, at the time the messages were sent, none of the former APT salespeople had retained Dentons as counsel. "Under no set of circumstances does the law support Plaintiff's assertion that such messages are privileged." ECF No. 283 at 4. Had APT messaged its former employees in place of Dentons, there would have been no concern with a 3.4(f) violation and Dentons also would not have been able to assert its unsuccessful claim of attorney-client privilege. But the court's rejection of the privilege claim does not render sanctions appropriate.

Even if the court were to conclude that Dentons had violated Rule 3.4(f), the sanctions proposed by Defendants are unwarranted. Defendants ask the court to (1) give a jury instruction that Defendants are entitled to an adverse inference concerning the testimony of the former APT employees and (2) award Defendants fees and costs related to uncovering the alleged Rule 3.4 violation.

Defendants assert that the adverse jury instruction is an appropriate remedy because, absent Dentons' intervention, former APT employees may have provided testimony more favorable to Defendants. The court disagrees. While it is possible that the LinkedIn messages sent by Dentons made the former APT employees less willing to communicate ex parte with Defendants, Defendants nevertheless were able to depose the witnesses and obtain their sworn

11

testimony. Under these circumstances, it would be unwarranted for the court to instruct the jury to make an inference that is contrary to the testimony given by witnesses under oath with counsel for both parties present. Moreover, even in the absence of Dentons' message, former APT employees were not obligated to, and may have chosen not to, respond to Defendants' requests.

Defendants maintain that they were motivated to request an adverse inference instruction as a sanction because some of the initial ex-parte statements that the former APT employees had provided were more favorable to Defendants than their subsequent deposition testimony. ECF No. 304 at 10. But Defendants could have asked the former employees about any such inconsistencies in their statements during their depositions and they failed to do so. Defendants also retain the ability to impeach the witnesses at trial with their alleged inconsistent statements. The case law that Defendants cite relating to adverse inference sanctions applies to situations where witnesses are not available. The court is unaware of any authority supporting the idea that counsel's violation of 3.4(f) justifies an adverse inference jury instruction when the opposing party may, and already has, deposed the witness. Defendants cite *Imclone* for the proposition that the court may order an adverse inference instruction. Notwithstanding the fact that counsel in *Imclone* engaged in more violations of Rule 3.4(f) not present here, the court in *Imclone* did not grant an adverse inference instruction. Rather, the court "permitted [MIT] to offer evidence of the improper conduct of ImClone's attorneys to lay a foundation for an instruction permitting the jury to draw an inference that ImClone believed that [the absent witness's testimony would have] supported MIT's claims in the litigation." *Imclone*, 490 F. Supp. 2d at 127.

In summary, the court concludes that even if the message sent by Dentons violated Rule 3.4(f), an adverse inference instruction is unwarranted. It therefore denies Defendants' request.

The court is also not persuaded to award costs and fees to Defendants. Defendants argue that Dentons' behavior caused Defendants to "engage in protracted correspondence with APT's counsel" and file several motions regarding APT's allegations of attorney-client privilege. ECF No. 304 at 11. District courts have the inherent power to "levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980). This power includes assessing attorney's fees "against counsel who willfully abuse judicial processes." *Id.* at 766. However, "attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Id.* at 767; *see Harris* at *1 (awarding attorney's fees because "the Court finds that the defendants' retaliatory discrimination against trial witnesses constituted bad faith conduct in this litigation . . . .").

Magistrate Judge Romero held that "[u]nder no set of circumstances does the law support Plaintiff's assertion" that the LinkedIn messages sent to APT's former employees were covered by attorney-client privilege. ECF No. 283 at 4. While the court notes Dentons' gamesmanship on the privilege issue, it does not justify an award of attorneys' fees to Defendants with respect to this unsuccessful motion for sanctions. Although Defendants assert that attorney's fees are appropriate because Dentons' messages caused Defendants to incur extra costs in issuing subpoenas and taking formal depositions, these are routine efforts in which counsel engages as part of the discovery process. In short, the court concludes that an award of attorneys' fees and costs is inappropriate.

## CONCLUSION & ORDER

The court concludes that Dentons did not violate Rule 3.4(f) of the Utah Rules of Professional Conduct and DENIES the motion for sanctions. ECF No. 302.

DATED February 7, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge